# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIORITY PHARMACY, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SERONO, INC., a Delaware corporation; SERONO LABORATORIES, INC., a Delaware corporation, and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 09cv1867 BTM(POR)<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Defendants Serono, Inc. and Serono Laboratories, Inc. (collectively "Serono" or Defendants") have filed a motion to dismiss Plaintiff's First Amended Complaint. For the reasons discussed below, Defendants' motion to dismiss is **GRANTED**.

## I. BACKGROUND

In this action, Plaintiff Priority Pharmacy, Inc. ("Priority"), sues Serono for attorney's fees and costs in excess of $300,000 that it incurred in defending itself in United States ex. Rel. Driscoll, et al. v. Serono, Inc., et al., Case No. 00-11680, a qui tam action filed in the United States District Court of Massachusetts. The qui tam action concerned the alleged violation of federal and state law by Serono and certain pharmacies, including Priority, in connection with the sale/purchase of Serono's AIDS treatment drug, Serostim.

Since the mid-1990s, Serono has manufactured and sold the drug Serostim, which is approved for the treatment of "wasting" associated with AIDS. Priority is a California San Diego-based pharmacy.

Serono devised a promotional program called the "data collection program" under which participating pharmacies collected data and provided information to Serono regarding the sale and dispensation of Serostim. (FAC ¶ 16.) Such data allowed Serono to track sales of Serostim and establish a quota and bonus structure for its sales representatives in order to further increase sales of Serostim. (Id.) To reimburse the pharmacies for the costs associated with performing the services requested by Serono under the data collection program, Serono provided the pharmacies with a so-called "price reduction" for Serostim. (Id.) The "price reduction" was not in the form of a discounted purchase price, but, rather, took the form of reimbursement payments that Serono made periodically. (Id.) The reimbursement paid to Priority under the Serostim Pharmacy Data Collection Administrative Fee Agreement (Defs.' RJN filed on 9/30/09, Ex. B, ¶ 2.1) was $2 per mg of Serostim sold.

Priority participated in the data collection program from 1997 through January 2000. (FAC ¶ 20.)

On August 17, 2000, the qui tam action was filed against Serono, alleging that Serono knowingly accepted payment or reimbursement from public and private health insurers that exceeded the reimbursement price for Serostim established by agreement between Serono and the FDA. (FAC ¶ 27.) Subsequently, the complaint was amended several times, adding claims against Serono for violations of federal law and the false claim acts of various states, adding as defendants pharmacies which participated in the data collection program, and adding claims that the pharmacy defendants violated the federal False Claim Act and state false claims acts.

The United States eventually elected to intervene as to the federal claims against Serono, and Serono engaged in settlement negotiations with the federal government and the relators. (FAC ¶ 32.) In October, 2005, Serono, the government, and the relators entered into a settlement agreement under which Serono agreed to plead guilty to criminal charges

and pay an amount exceeding $700 million to resolve all of the pending matters.  (FAC ¶ 31.)

The United States elected not to intervene as to the federal claims against the pharmacy defendants.  (FAC ¶ 34.)  On August 19, 2007, Priority brought a motion to dismiss the Fourth Amended Complaint upon various grounds.  In an order dated March 18, 2008, the Massachusetts district court dismissed the Fourth Amended Complaint as against the pharmacy defendants on the ground that the relators had failed to plead fraud with particularity.  (Pl.'s RJN filed on 10/23/09, Ex. 5.)  The court explained: "These paragraphs outline a fraudulent scheme, but they fail to identify a single particular false claim submitted for payment by any of the pharmacy defendants to any governmental agency at any time.  There are no details concerning such matters as the specific dates, content, identification numbers, or dollar amounts of false claims actually submitted."  (Id.)

In the FAC, Priority alleges that Serono induced Priority into entering into the data collection program by (1) failing to disclose to Priority that the data collection program would be susceptible to government investigation and litigation because of Serono's structuring of the program with so-called "price reductions" in the cost of Serostim; and (2) failing to disclose that Serono's activities to promote Serostim would be subject to intense governmental scrutiny and investigation because Serono was engaged in fraudulent activities such as  inducing physicians to prescribe Serostim with improper financial incentives and developing medical devices which were improperly altered in a manner to support increasing the dosages of Serostim prescribed to AIDS patients.  (FAC ¶¶ 21-22.)  Priority claims that it did not ever knowingly submit any false or overstated claims for reimbursement for Sersotim to any healthcare agency and that it was forced to defend the qui tam action solely due to Serono's "structuring of the data collection program in a manner that raised suspicion and created a false appearance that reimbursement claims to healthcare agencies were false or overstated."  (FAC ¶¶ 35, 36.)

Priority asserts the following claims against Serono: (1) negligence; (2) tort of another; (3) indemnity; and (4) declaratory relief.  Priority seeks damages in excess of $300,000 for the costs of defending and obtaining a dismissal of the qui tam action.

Case 3:09-cv-01867-BTM-POR   Document 25   Filed 05/20/10   PageID.1162   Page 4 of 9

## II. PROCEDURAL BACKGROUND

On May 29, 2009, Plaintiff commenced this action. In its original complaint, Priority asserted claims for (1) equitable indemnification; (2) negligence; and (3) declaratory relief.

In an order filed on January 5, 2010, the Court denied Serono's motion to transfer venue and granted Serono's motion to dismiss the complaint for failure to state a claim. The Court held that Priority had failed to allege facts establishing a right to equitable indemnification under California or Massachusetts law. However, the Court granted Priority leave to file an amended complaint.

On January 25, 2010, Priority filed its FAC.

## III. STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, __ U.S. __, 129 S,Ct. 1937, 1950 (2009) (internal quotation marks omitted).

## III. DISCUSSION

Serono moves to dismiss the FAC for failure to state a claim. As discussed below, the Court agrees that the FAC fails to state a claim that would allow Priority to recover the attorney's fees it incurred in defending against the qui tam action.

Priority's theory of recovery on the FAC is grounded in the "tort of another" doctrine. Under this doctrine, "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." Prentice v. North Amer. Title Guar. Corp., 59 Cal. 2d 618, 620 (1963). See also Restatement (Second) of Torts § 914(2) (One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.) Under the "tort of another" doctrine, there is no recovery of "attorney's fees *qua* attorney's fees." Brandt v. Superior Court, 37 Cal.3d 813, 818 (1985). Instead, any attorney's fees recovered under the doctrine constitute damages caused by the defendant's wrongful actions. Id.

Priority alleges that because of Serono's negligent actions – i.e., structuring the data collection program to provide for "price reductions" in the form of reimbursement payments and not disclosing Serono's other fraudulent activities that would subject the data collection program to intense governmental scrutiny and investigation – Priority was forced to defend itself in the qui tam action. Priority alleges, "As a direct result of Serono's . . . improper acts, and not due to any wrongdoing by Priority, Priority was required to act in the protection of its interests and was forced to expend substantial amounts of attorney's fees and costs in defending and obtaining a dismissal of the qui tam action." (FAC ¶ 47.)

Priority makes it clear that it is not seeking indemnification from Serono as a joint tortfeasor. (FAC ¶ 46.) However, Priority does assert an indemnification claim as an alternate cause of action. The indemnification claim fails to state a claim because Priority

has not alleged that it satisfies the requirements of Cal. Civ. Proc. Code § 1021.6, which provides:

> Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict.

As discussed in the Court's prior order, Priority does not satisfy the requirements of section 1021.6 because there was no determination that Plaintiff was without fault. The claims were dismissed against Priority for failure to state fraud with particularity. No judgment was entered in Priority's favor. In addition, there are no allegations that Priority demanded that Serono provide the defense in the qui tam action.

Priority's "tort of another" claim does not rest upon the principles of equitable indemnification, that is, apportionment of liability on a comparative negligence basis. See American Motorcycle Assn. v. Superior Court, 20 Cal. 3d 578, 583 (1978). Although equitable indemnification appears to be a subset of the "tort of another" doctrine, the doctrine also encompasses cases that do not involve equitable indemnification. For instance, the doctrine extends to cases where the plaintiff was forced to *bring* a lawsuit as the result of the defendants' wrongdoing. See e.g., Prentice, 59 Cal. 2d at 620-621 (plaintiffs were required to bring quiet title action because the defendant, who acted as an escrow holder, acted negligently in closing the sale of the property); Gray v. Don Miller & Assoc., Inc., 35 Cal. 3d 498 (1984) (defendant broker's misrepresentation to potential buyer of real property that the sellers had agreed to sell the property was the direct cause of plaintiff's lawsuit for specific performance against the sellers who had decided not to sell the property.) The doctrine also extends to cases where the "tort of another" claimant was forced to *defend* a suit that was the direct result of the tortfeasor's negligence or other wrongdoing toward the claimant, but there is no claim that the tortfeasor was at fault vis-à-vis the plaintiff in the underlying suit.

See, e.g., Sindell v. Gibson, Dunn & Crutcher, 54 Cal. App. 4th 1457 (1997) (defendant attorneys, who prepared decedent's estate plan, were liable to decedent's children under the "tort of another" doctrine because the children were sued by decedent's second wife over what property was included in the decedent's estate solely as a result of the attorneys' failure to obtain a written consent from the second wife regarding certain gift and sale transfers).

Cal. Civ. Proc. Code § 1021.6 codifies the "tort of another" doctrine only for claims of implied indemnity. Burger v. Kuimelis, 325 F. Supp. 2d 1026, 1043 (N.D. Cal. 2004). Therefore, section 1021.6 is not applicable to Priority's "tort of another" claim and does not bar the claim.

Priority's "tort of another" claim fails for a different reason - specifically, because the facts alleged do not establish a plausible claim.[1] Under the "tort of another" doctrine, the filing of the lawsuit against or by the party seeking recovery of its attorney's fees must have been the "natural and proximate consequence" of the defendant's wrongdoing. Prentice, 59 Cal. 2d at 621. See also Gray, 35 Cal. 3d at 507 (broker's misrepresentation was the "direct cause" of plaintiff's action for specific performance against the sellers); Sindell, 54 Cal. App. 4th at 1470 ("Under California law, it is a well-established principle that attorney fees incurred through instituting or defending an action as a *direct result* of the tort of another are recoverable damages." (Emphasis added.)).[2]

Even assuming the factual allegations of the FAC to be true, the Court cannot conclude that the qui tam claims against Priority were the "natural and proximate

---

[1] In its prior order, the Court cited Davis v. Air Techinical Indus., Inc., 22 Cal. 3d 1, 6 (1978) for the proposition that the "tort of another" doctrine applies only in "exceptional circumstances." However, as pointed out by Priority, Davis's holding in this regard was subsequently limited to products liability cases. Gray v. Don Miller Assoc., 35 Cal. 3d 498, 508 (1984). For purposes of clarity, the Court emphasizes that it is not applying the "exceptional circumstances" requirement to Priority's "tort of another" claim. As discussed infra, Priority's "tort of another claim" fails as a result of Priority's failure to establish causation.

[2] To the extent Massachusetts recognizes the "tort of another" doctrine, the same requirements of legal causation would undoubtedly apply. See e.g., Mutual Fire, Marine and Inland Ins. Co. v. Costa, 789 F.2d 83, 88 (1st Cir. 1986) ("[W]hen the natural consequence of a defendant's tortious conduct or a defendant's breach of contract is to cause the plaintiff to become involved in litigation with a third party, the attorney's fees associated with that litigation are recoverable from the defendant.").

consequence" of Serono's actions as opposed to the direct result of (1) Priority's failure to determine how the reimbursement payments should be characterized under the various laws; and (2) Priority's decision to make claims for the full price of Serostim purchased from Serono.  Although the FAC states Priority's opinion that the so-called "price reductions" in reality "were *not* actual price reductions or discounts, but created an appearance of such," Priority never alleges that the payments were not price reductions *under the applicable laws* and that Priority therefore *never made false claims* when seeking reimbursement from healthcare agencies for the full price of Serostim.[3]  Priority stops short of claiming that it never made false claims and instead alleges that it did not "*knowingly* submit any false or overstated claims for reimbursement." (Emphasis added.)  (FAC ¶¶ 19, 35, 46; Opp. at 13:11-24.)

If, under the applicable laws, the reimbursement payments made by Serono were price discounts (as they were characterized in the Data Collection Administrative Fee Agreement), the Court fails to see how Serono is to blame for Priority's decision to treat the payments as pure reimbursements of administrative costs and make claims for the full price of the drug.  The FAC does not allege that Serono had any input into how Priority would make claims for reimbursement to healthcare agencies.  As noted in the Court's prior order, the Data Collection Administrative Fee Agreement actually provided that it was Plaintiff's responsibility to "comply with applicable laws and regulations governing the practice of pharmacy in Pharmacy's state and the prevailing standards of practice in Pharmacy's state." (Paragraph 1.4.)

Similarly, if Priority in fact made false claims, although unknowingly, any fraudulent activities of Serono that might have subjected its promotional activities of Serostim to greater scrutiny would not be the proximate cause of legal claims being brought against Priority. Priority's submission of false claims would be a superceding cause of any resulting legal

---

[3] The Court notes that such an argument might be difficult to make because the Data Collection Administrative Fee Agreement provided that the reimbursement was to be in the amount of $2 per mg of Serostim sold.  It does not appear that the amount of the reimbursement was tied to the actual administrative cost of collecting the data and information requested by Serono.

action against Priority.[4]  The Court would not hold Serono liable on the theory that Priority's false claims may not have been discovered if Serono's activities had not subjected the data collection program to greater scrutiny.

Because the FAC does not give rise to a plausible claim that Serono's alleged wrongdoing was the proximate cause of the qui tam action against Priority, Priority's claims for negligence, "tort of another," and declaratory relief are dismissed for failure to state a claim.[5]

### III. CONCLUSION

For the reasons discussed above, Serono's motion to dismiss the FAC is **GRANTED**. The FAC is **DISMISSED** for failure to state a claim.  The Court will grant Priority one final chance to amend its complaint.  If Priority chooses to do so, Priority must file the Second Amended Complaint within 20 days of the entry of this Order.

**IT IS SO ORDERED.**

DATED: May 20, 2010

*[signature]*

Honorable Barry Ted Moskowitz
United States District Judge

---

[4] Priority alleges that it was forced to defend itself against all of the allegations in the fourth amended complaint, including allegations against Serono that did not involve the data collection program and related solely to Serono's and Does 1-20's fraudulent conduct in promoting, marketing, and selling Serostim, of which Priority was ignorant and had no participation. (FAC ¶¶ 37, 38.)  However, Priority does not explain why it would have to defend against these allegations if they bore no relation to the claims against it.

[5] Serono also seeks dismissal of the FAC on other grounds that the Court does not find persuasive.  Serono argues that its good faith settlement of the qui tam action bars Plaintiff's claim for contribution or indemnity.  However, even assuming the settlement was found to be in "good faith" and all applicable procedures were followed, Plaintiff's "tort of another" claim is not one for contribution or indemnity from a concurrent tortfeasor.  Serono also argues that Priority waived its right to attorney's fees when it withdrew its motion for attorney's fees in the qui tam action.  Serono has not identified any legal authority in support of the proposition that the withdrawal of the motion for attorney's fees, which was filed against the *relator* in the qui tam action, somehow waived Priority's right to seek attorney's fees against *Serono* under the theory of "tort of another."